UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

INEABELLE MEDINA,

    Plaintiff,

v.                                               Case No:   6:15-cv-991-Orl-28TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Ineabelle Medina brings this action for judicial review of a final decision of Defendant, the Commissioner of the Social Security Administration denying her applications for a period of disability, disability insurance benefits, and supplemental security income.   Following a review of the administrative record and the joint memorandum submitted by the parties, and for the reasons that follow, I respectfully recommend that the Commissioner's final decision be **affirmed**.

## I. Background

Plaintiff filed her applications for benefits on July 18, 2011, alleging that she has been disabled since March 31, 2010 (Tr. 11, 142-51).   Her claims were denied initially and on reconsideration, and she requested a *de novo* hearing before an administrative law judge ("ALJ").   The administrative hearing was held on August 14, 2013, at which time Plaintiff, represented by an attorney, appeared and testified, as did a vocational expert (Tr. 31).   In a decision dated November 12, 2013, the ALJ concluded that Plaintiff was not disabled from March 31, 2010, through the date of the decision (Tr. 11-24).   The

ALJ's holding became the final decision of the Commissioner when the Appeals Council declined review on April 15, 2015 (Tr. 1-3).

Plaintiff was 42 years old on the date of the ALJ's decision (Tr. 24, 142). She has a limited education, is able to communicate in English, and has past relevant work as a payroll clerk, billing clerk, and food and beverage checker (Tr. 36, 47, 166). She was last insured for disability insurance purposes on December 31, 2015 (Tr. 13).

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the Commissioner's five-step sequential evaluation process published at 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability date (Tr. 13). Next, the ALJ found that Plaintiff's severe impairments consist of degenerative disc disease of the cervical and lumbar spine; bilateral carpal tunnel syndrome, status post bilateral carpal tunnel release; obesity; tendinitis/impingement of the left shoulder; left eye blindness; and fibromyalgia (Id.). The ALJ concluded that Plaintiff's impairments do not meet or equal a listed impairment and leave her with the residual functional capacity ("RFC") to

> perform full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand/walk and sit for 6 hours each in an 8-hour workday. The claimant cannot climb ladders, ropes or scaffolds and cannot work at heights or with dangerous moving machinery. She can frequently reach overhead and occasionally climb stairs or balance, stoop, kneel, crouch or crawl. She cannot constantly handle or finger bilaterally. She is additionally limited in depth perception and peripheral vision due to monocular vision and must avoid working at unprotected heights or with dangerous moving machinery.

(Tr. 17-18). The ALJ relied on the testimony of the vocational expert to find that Plaintiff's RFC does not preclude the performance of her past relevant work as a payroll clerk or food beverage checker (Tr. 23). Based on these findings, the ALJ decided that Plaintiff was not disabled within the meaning of the Social Security Act from March 31, 2010, through the date of the administrative decision (Tr. 23).

### III. Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against

the Commissioner's decision.  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]"  Id.  "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

The record includes responses to three questionnaires titled Physical Capacities Evaluation, Physical Effects of Pain, and Mental Effects of Pain, all dated January 11, 2013 (Tr. 557-60).  The questionnaires are signed by Dr. Zulmivette Ortiz, M.D. (Id.). The parties did not cite to any earlier examinations of Plaintiff by Dr. Ortiz, and I did not find any in the record.  Dr. Ortiz identifies herself as a primary care physician on all three forms.

Using checkmarks, Dr. Ortiz indicated on the Physical Capacities Evaluation form that Plaintiff could sit and stand/walk for "No. hrs." during an eight-hour day and would need an opportunity to alternate sitting and standing throughout the day (Tr. 557).  The doctor also checked responses indicating that Plaintiff could not perform pushing or pulling with her right or left; could not use either hand for repetitive motion tasks such as writing, typing, and assembly; and could not use her feet for repetitive movements such as operating foot controls (Id.).  When asked if Plaintiff suffers from fatigue the doctor checked "no" (Tr. 558).  Dr. Ortiz also indicated that Plaintiff could occasionally lift zero to five pounds; never crouch or crawl; and could occasionally climb, balance, stoop, kneel, and reach above shoulder level (Id.).  Lastly, the doctor checked the form to indicate that

Plaintiff has severe restriction of activities involving being around moving machinery and moderate restriction of activities involving unprotected heights, exposure to marked changes in temperature and humidity, and driving automotive equipment (Id.).

On the Physical Effects of Pain form, Dr. Ortiz checked responses indicating that Plaintiff suffers from pain, there is a reasonable medical basis for her pain, and that Plaintiff's pain is "disabling to the extent that it would prevent the patient from working full time at even a sedentary position." (Tr. 559). When asked to describe Plaintiff's pain, Dr. Ortiz wrote "Fibromyalgia, Bursitis and tendonitis of the shoulder, Arthritis of vertebral column, and Osteoporosis of the vertebral column. Lumber and cervical area." (Id.).

On the Mental Effects of Pain form, Dr. Ortiz made a checkmark indicating that Plaintiff's pain and/or side effects of medication have a mild effect on her attention and concentration (Tr. 560).

The only medical record showing that Dr. Ortiz ever examined Plaintiff consists of notes dated July 19, 2013, approximately seven months after the doctor filled out the forms (Tr. 550-552). According to those notes, Plaintiff went to a clinic for a follow up visit complaining of pain in her lower back, shoulders and arms (Id.). Plaintiff was also interested in the results of a cholesterol examination (Id.). The name and location of the clinic, and if, or when, Dr. Ortiz had previously seen Plaintiff are unknown. When Plaintiff saw Dr. Ortiz she denied experiencing painful joints or weakness (Id.). On examination the doctor found Plaintiff's motor strength to be normal in both her upper and lower extremities (Tr. 551). The doctor also found that Plaintiff had full range of motion in her neck; no clubbing, cyanosis, or edema in her extremities; and an intact sensory exam (Id.). Dr. Ortiz' assessment of Plaintiff was: "Other malaise and fatigue–780.79

(Primary); Lumbago–724.2; Spasm of muscle–728.85; Pure hyperglyceridemia–272.1."

(Id.).

The ALJ provided the following discussion of Dr. Ortiz' opinions:

> In January 2012, Dr. Ortiz of the Memphis Spine Center found that the claimant could occasionally lift 0-5 pounds but could never lift more than that. He determined that she could occasionally reach above shoulder level and kneel, stoop, balance and climb, but could never crouch or crawl. He provided her with serve [sic] restrictions as far as her ability to be around moving machinery was concerned and moderate restrictions as far as her ability to work at unprotected heights or to be exposed to marked changes in temperature or humidity. He also indicated she had moderate restrictions in regards to her ability to drive automotive equipment. He opined that her condition was disabling enough to prevent her from working full time even in a sedentary position. (Exhibit 25F).
>
> …
>
> Little weight is given to the majority of the opinions of treating physician Dr. Ortiz as to the degree of limitation, as his opinions are not consistent with the medical record in general, as well as his own medical records, which show normal strength in all of her extremities, full sensation and no edema. The degree of abnormality shown by the medical evidence does not support a conclusion that environmental limitations in regard to the need to avoid vibration are appropriate, as assessed by the State agency physicians. Likewise, the environmental limitations assessed by Dr. Ortiz in regard to temperature or humidity are not supported.

(Tr. 22).

Some of the ALJ's findings raise concerns. First, there is no evidence that Dr. Ortiz worked at the Memphis Spine Center. In fact, her July 19, 2013 notes include an Orlando, Florida address (Tr. 550). Second, Dr. Ortiz made her findings in 2013. Third, there is not a basis in the record to characterize Dr. Ortiz as a treating physician (Doc. 17 at 11). We do not know what kind of relationship Plaintiff had with the doctor (Id.). Still,

- 6 -

the ALJ correctly noted that according to Dr. Ortiz, Plaintiff's condition was so disabling that she could not even work full time at a sedentary position.

Seemingly because the ALJ failed to mention Dr. Ortiz' notation of fibromyalgia, bursitis, tendonitis, arthritis, and osteoporosis, Plaintiff accuses the ALJ of mischaracterizing the doctor's medical opinion (Id. at 12).   Plaintiff also accuses the ALJ of focusing on one aspect of the evidence while disregarding contrary evidence (Id.). The record does not support Plaintiff's accusations.   The ALJ correctly stated Dr. Ortiz' ultimate opinion that Plaintiff was so disabled that she could not even work at a sedentary position.   Then, the ALJ provided valid reasons for discounting that opinion including that it is not supported by the doctor's own examination notes.   Those notes do not mention bursitis, tendonitis, arthritis, or osteoporosis (but do show a medical history for fibromyalgia).   On the Physical Capacities Evaluation the doctor said Plaintiff did not suffer from fatigue.   But in her examination notes, part of Dr. Ortiz's primary assessment of Plaintiff was fatigue.   In the same notes, Dr. Ortiz recorded that Plaintiff's motor strength in her upper and lower extremities was normal, she had a full range of motion in her neck, and that Plaintiff denied experiencing painful joints or weakness.   This is substantial evidence supporting the ALJ's decision to give Dr. Ortiz' opinions little weight.

The record also shows that contrary to Dr. Ortiz' opinion of disabling limitations, in April 2010, Plaintiff had an endoscopic carpal tunnel release (Tr. 269), and in August 2010, she was released to full duty work with no restrictions (Tr. 265).   A June 2011 examination found Plaintiff had a normal gait and station, normal spine curvature without spasms or tenderness, no trigger points, full range of motion in her upper and lower extremities, and her sensation, muscle strength, and reflexes were intact (Tr. 370).   June 2011 lumbar and cervical x-rays showed that Plaintiff had only normal, age-related

changes (Tr. 371).   A June 2011 MRI revealed only mild spondylotic changes and mild changes of intervertebral osteochondrosis (Tr. 411).   August 2011 x-rays showed only minor degenerative change at the L4/5 facet joints, and normal alignment with mild degenerative change in the mid cervical spine (Tr. 381).   A September 2011 MRI of Plaintiff's lumbar spine revealed a disc bulging from L1-2 through L5-S1, and an MRI of her left shoulder showed a rotator cuff impingement and biceps tenosynovitis (Tr. 633-34).   None of these findings support Dr. Ortiz' January 2013 findings.

The Commissioner also argues, correctly, that checklist opinions of the sort Plaintiff relies on are generally disfavored.   Foster v. Astrue, 410 F. App'x 831, 833 (5th Cir. 2011) (doctor's use of "questionnaire" format typifies "brief or conclusory" testimony); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); Hammersley v. Astrue, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms … have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions.").

Now, I find that the ALJ did not mischaracterize Dr. Ortiz' opinions or improperly focus on only one aspect of the evidence.   I also find that the ALJ cited to substantial evidence to discount the doctor's opinions.

"Pain alone can be disabling, even when its existence is unsupported by objective evidence."   Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).   At the administrative hearing, Plaintiff testified that she experienced pain in her arms and back and that her legs gave up on her (Tr. 39).   She said she could sit for about 20 minutes before needing to change positions and that she could stand for 15 minutes before her

legs would go wobbly (Tr. 44).   Plaintiff argues that the ALJ's determination of Plaintiff's credibility[1] when she gave this testimony is erroneous (Doc. 17, pp. 16-19).

"[C]redibility determinations are the province of the ALJ."  Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).   When making this determination, "[i]f the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so."  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).   "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."  Id. (citing Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988)).

Here, the ALJ found that fibromyalgia was one of Plaintiff's severe impairments (Tr. 13).  In Varner v. Astrue, No. 3:09-cv-1026-J-TEM, 2011 WL 1196422, at *7 (M.D. Fla. Mar. 29, 2011), the court said that "[fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective."

To serve as a basis for disability, a claimant's subjective complaints of pain must be supported by evidence of an underlying medical condition.  Wilson v. Barnhart, 284 F.3d at 1225 (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).   If they are, the ALJ must determine (a) whether there is "objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  Id. (citing Holt, 921 F.2d at 1223).   In addition to using all of the available evidence to evaluate the intensity,

---

[1] The regulations do not refer to a claimant's "credibility."   SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 24, 2016).   SSR 16-3p "clarify[ies] that subjective symptom evaluation is not an examination of an individual's character."  Id.

persistence, and limiting effects of an individual's symptoms, the ALJ should consider the following factors:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2016 WL 1119029, at *7. See also 20 C.F.R. §§ 404.1529(c)(1), (c)(3).

The ALJ summarized Plaintiff's testimony and subjective complaints and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 19). The ALJ evaluated Plaintiff's activities of daily living and the medical evidence and wrote:

> In summary, the claimant had bilateral carpal tunnel surgery in 2010, but was released to return to work without restriction in August 2010 (Exhibit 4F). There is no evidence of a residual hand/wrist deficit, but due to the surgical history, some degree of manipulative limitation has been included in the residual functional capacity. The claimant has also been treated for diffuse chronic pain and tenderness with pain management, physical therapy and chiropractic care (Exhibits 12F, 17F,

- 10 -

> 20F, 25F); however, imaging does not reveal more than mild spinal abnormality and there is no evidence of a deficit in strength or sensation, gait and station has been normal, and there are only isolated findings of spasm. There is imaging evidence of some abnormality of the left shoulder (Exhibits 12F/17F, and 25F/76), so some degree of limitation on overhead reaching has been included. Dr. Ortiz that [sic] the claimant's pain and side effects from her medication only mildly affect her attention and concentration, and no persistent and significant medication side effects are noted in the record. Also, the evidence shows that she is able to drive, watches ample amounts of television and enjoys reading, all of which are activities which require sustained attention and concentration. The claimant had abdominal surgery for a hernia, a foreign body and gall stones in 2013, but there is no indication that these conditions did not resolve with treatment. The claimant has been treated for a rash, but there is no indication that this condition persists or is limiting. The claimant's obesity has also been considered with BMI from 34-35, when concluding that the claimant has the residual functional capacity for a range of light work.

(Tr. 21-22). Then, the ALJ explained why she found Plaintiff's allegations and testimony to be only "partially credible:"

> The medical evidence does not establish weakness, fatigue, pain or any other symptom of the level and severity that would result in debilitating limitations. The medical evidence does not establish any medication side effects that would result in debilitating limitations. The claimant does not require use of a brace on the upper or lower extremities, or an assistive device for ambulation. The claimant has not required recurrent inpatient hospitalizations for mental or physical problems, recurrent emergency room visits, recurrent crisis center visits, Baker Act admissions, recent surgeries, or chronic pain management treatment. The claimant's treatment has remained conservative only. The claimant has reported to treating physicians that the symptoms were improved with medications or other treatment. The claimant has not been advised to refrain from performing all gainful work activity and he [sic] activities of daily living are self-restricted, as no treating source has advised the claimant to stay home all day, lie down during the day, or to restrict activities of daily living in any manner.

(Tr. 22-23).

- 11 -

Plaintiff does not attack the validity of these findings. Instead, she argues that Dr. Ortiz' January 11, 2013 responses to the check-form questionnaires establish that there is a reasonable medical basis for her complaints of disabling pain (Doc. 17 at 18-19). Having found no error in the ALJ's evaluation of Dr. Ortiz's opinion, I find no merit in Plaintiff's related challenge to the ALJ's credibility determination.

Although Plaintiff is not explicit in her written arguments, it is evident that Plaintiff thinks her case is similar to Varner. However, Varner can be factually distinguished from this case. In Varner the court held that the ALJ had improperly evaluated the claimant's credibility by, *inter alia*, placing heavy reliance on the claimant being able to perform minimal activities of daily living; using "sit and squirm" jurisprudence. Varner, 2011 WL 1196422, at *6-9. In Varner, the ALJ considered the claimant's "unpersuasive appearance and demeanor" at the hearing; failed to consider portions of the claimant's testimony; categorized the claimant's treatment for fibromyalgia as "conservative" and failed to specify what treatment the ALJ would prefer to have seen when the treating physician described claimant's treatment as "aggressive;" and the ALJ improperly found that medication effectively treated the claimant's symptoms with only "mild" side effects. Id. There was also a question as to whether the ALJ considered fibromyalgia in combination with the claimant's other impairments because the ALJ did not include fibromyalgia as a severe impairment. Id.

Here, unlike in Varner, the ALJ's categorization of Plaintiff's treatment as "conservative" is not contrary to the medical evidence or any medical opinion. Plaintiff argues that generally fibromyalgia is treated conservatively, but the ALJ's credibility determination is not limited to Plaintiff's fibromyalgia or complaints of pain, (Tr. 23 ("The claimant has not required recurrent inpatient hospitalizations for mental or physical

- 12 -

problems, recurrent emergency room visits, recurrent crisis center visits, Baker Act admissions, recent surgeries, or chronic pain management treatment.")), and, as noted *supra*, the ALJ is permitted to consider the type of treatment a claimant has undergone when assessing the claimant's credibility. See 20 C.F.R. § 404.1529(c)(3)(v). The ALJ also noted that that Plaintiff reported improvement with medication and treatment and that Plaintiff has only mild medication side effects (Tr. 20-21, 560). Unlike the ALJ's similar findings in Varner, the ALJ's findings here are supported by substantial evidence, as cited by the ALJ.

In short, the ALJ noted and followed the appropriate standards, performed an appropriate evaluation of the evidence, and clearly articulated the bases of her credibility determination. Because the ALJ's analysis and credibility determination enjoy substantial support in the record, this Court will not revisit that determination.

### V. Recommendation

For these reasons, I **RESPECTFULLY RECOMMEND** that the Commissioner's final decision be **AFFIRMED**, and that the Clerk be directed to enter judgment accordingly and **CLOSE** the file.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on June 10, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record